unless you've finished your subtractions for the collateral. That's right, but once the court had already ruled on the issue, trial counsel saw no reason to move for reconsideration of that issue. It was final. In your position, that's a legal issue, not a factual issue. That's correct, Your Honor. All right. Thank you. If it's a factual issue, you waive it. I can't say that we, if it's mere waiver, this is still subject only to plain error of view, and I think that this is plain error. The government's arguing more than plain error. They're arguing invited error, something that would get past that. I don't think this is enough for that, even if it's a factual issue. Thank you, both. Very well argued and brief. Thank you, counsel. The matter is under advisement, and we'll turn to our last argued case, which is 22-936. Oh, I'm sorry. Jasmine. Is it Ms. Makhnovich, am I saying? Ms. Makhnovich. Good morning, Your Honors. Good morning. Thank you for your patience. Thank you, Your Honors, for having me here. You have reserved two minutes for a vote. Your Honors, I'm the plaintiff appellant in this action. May I please support? I file this appeal, Your Honors, because the debt collector's defendants continue their abusive practices unreprimanded. There's no recourse. There are no corrective actions on their part, as they simply push a consumer like me, like myself, into an exhaustive submission. I raised a lot of issues in my opening brief, and I can narrow it down to a select few, because I know I only have three minutes of your time, Your Honors. First, I believe that the district court dismissal of the FDCPA claim against the board was an error, and it should be reversed, because the parties never completed a full briefing on the motion. So I was never able to express myself as to the fact that the board acted as a debt collector. That wouldn't have met the definition of debt collector that's in the FDCPA. Yes, the reason why the board acted as a debt collector, Your Honors, is by preparing the calculations of the grossly exaggerated debts. By never properly accounting for credits given for emergency repairs and maintenance abatements, or accounting for these credits and then charging them back from the statements, they submitted the illegal charges directly to Novick Firm without further review. And without proper and further review of the file, Novick submitted the illegal charges provided by the condominium associations to myself and to the court in debt collection actions as directed by the board in addition to conspiring to utilize different corporate statuses as corporation versus unincorporated association as it suited them in that particular moment because they cannot sue or they cannot be sued in the name of the unincorporated association in the state court. So they knew that they were misrepresenting to the state court, to myself, that they can proceed in a state action when in fact they cannot. They did not disclose that in the original complaint. They did not disclose that in the amended complaint, Your Honors. And I believe that's a material misrepresentation because I never had an opportunity to assert all my defenses. In fact, when I filed a counterclaim, it was severed. And then I filed my claims in state court. And then they go, they come in and they say, look, we're not going to accept your complaint. We're going to dismiss it based on lack of personal jurisdiction because I sued them as a corporation. I really, truly did not know it was an unincorporated association. So you see, misrepresenting that to a consumer like myself, and I don't think that I'm a stupid consumer, but misrepresenting that to myself was a material misrepresentation because my claims were severed. My claims were dismissed based on lack of personal jurisdiction, Your Honors. Thank you. Ms. McMitch, and you do have two minutes for rebuttal. We'll hear from- Thank you, Your Honors. Mr. Bogopoulos. Bogopoulos. Just like it's spelled. Yep, exactly. All right. Good afternoon, and may it please the court. My name is Gregory Bogopoulos, and I'm an attorney for the appellees. Gregory Bogopoulos- Which appellees? Gregory Bogopoulos and Nova Gettelstein-Lubell. And there are two orders right now under review with the court. There's an August 2019 order denying the appellant leave to amend, and a March of 22 order granting the appellees that I represent here today a summary judgment. I'm going to defer to the Co-Appellees Council to discuss the August 19 order, and I'll- Don't you represent a firm that is a debt collector? Yes. We're not disputing, Your Honor, that- We didn't dispute in the record that Nova Gettelstein is a debt collector. And would be subject to the FDCPA? Yes, we are not disputing that on this record, okay? That's good. Yes. A couple of issues with the March of 22 order that I want to address with the court. The first issue is the statute of limitations issue, and particularly with the 1692G claim regarding the initial communication. What we have in the record is no genuine dispute of proper delivery and service and receipt of the April 2015 notice, the November 2015 notice, the complaint, and two documents from the court action from March of 2016. Because this action was not filed until January 2018, we believe the court properly determined that that claim, at least for the 1692G claim, was time barred. To the extent that the court finds it was not untimely, the mailbox rule would certainly apply here, particularly, again, because the appellant has not set forth in the record a genuine dispute of non-delivery or receipt. He said she never got it, but you put in an affidavit of the regular business practice of how you mailed it? We actually put in, Your Honor, the actual certificate of mailing and certified mail receipt in the record. They were from- Who signed the certified mail receipt? I'm sorry? Who signed for it? That I'm not aware. I don't know if anyone signed for it, but again, with the FD- Is there a point of attaching a receipt that someone has to sign for it? You don't necessarily have to. You don't necessarily, I don't recall whether it's a return receipt situation or if it was just certified mail. But the bottom line is, is that on the record, because the FDCPA does not dictate the method of service of the initial communication, we would submit that setting it by regular mail with a certificate of mailing, which is stamped by the post office. And under the Hagner decision, which I- You put an affidavit that this is the way you would narrowly contact- We did not put that in, and I will just note for the record it's not really relevant. But handling condominium type debt collection cases was not really something we handled. We do it occasionally, but most of the cases we handle are rent-related cases for tenants. So did not want to say this is the normal course of business to send it a certain way when it's not something that's a normal business practice. But again, because the, I think it's Hagner v. United States, said that when you show proof that a post office receives mail to be sent, there is a presumption under the mailbox rule that it was sent and delivered in the ordinary course. And you have the right address and the right name? Correct, correct. And again, there's no statement from the appellant with specifics that I did not receive it. And here's why I probably did not receive it. It's simply I didn't receive it. But again, we have not just the initial notice, the November notice, the complaint with an affidavit of service from the prosecutor, and two March of 2016 documents from the civil action, which she did not receive. So certainly, she received papers in this proceeding, the civil court action, and did not, we can note, did not submit a genuine dispute. Regarding her claim regarding the communications with her daughter, who is an attorney in fact, we would submit again, as the district court determined, that an attorney under the FDCPA could mean an attorney in fact or an attorney at law. There's nothing in the statute, in the plain language of the FDCPA, which dictates that you can only communicate with an attorney at law. And in fact, in her power of attorney document, she noted that she gave her daughter, Allison Goldman, all rights over claims in litigation. She did not limit it just to adjournments in that case. She did not limit it to that specific case, claims in litigation. So the civil court judge, Judge Thompson, was correct to say, okay, you can now discuss this case with Ms. Goldman. And even the prior conversation with her, in April 2017 in the case, which Ms. Goldman did not dispute the statements by myself for, she- All right, thank you, counsel. Okay. And we'll hear now from Attorney Mazzola. May it please the court, your honors. Brian Mazzola of Boyd Richards, Parker Palanelli, and I represent the appellee board of managers. I submit- He's not a debt collector. Not a debt collector. It's alleged in the complaint, in fact, what the definition of a debt collector is, that a entity or a person who collects on behalf of a third party. The condominium, through counsel, was seeking to collect common charge arrears. And so we submit that the plaintiff admitted, as a judicial admission, that the condominium is not a debt collector and that the complaint was dismissed properly. And the primary allegation is that it was sua sponte and without an opportunity to flush out her arguments, and we submit that that's inaccurate. There was a motion to amend the amended complaint that she submitted and that in opposition, my predecessor had argued that the condominium is not a debt collector. She replied. She did not address that argument. And in addition to that, we had submitted in our briefs here on a de novo review. It would be futile to reinstate that complaint, not only because the condominium is not a debt collector, it can't be considered a debt collector under the circumstances, but that the statute of limitations had passed. And so that's date back to 2015, and the complaint was filed in January 2018. So it's not even close as far as the statute of limitations is concerned. And- Council, can I just ask a general question? Sure. Anyone from the Board of Governors, is that what you're called? Board of Managers ever discussed with Ms. Mankiewicz her complaints about the charges imposed on her? I don't know off of the record whether anyone from the board had an actual discussion with her. I can tell you from the state complaint that it's alleged that there were notices that went to the managing agent and to the board president. But I don't know if there was actual discussions that were held. Okay, thank you. Unless your honors have any further questions- Thank you, counsel. Ms. Mankiewicz, you do have two minutes for a question. Thank you, your honor. Very briefly- Let me ask you this. How much do you continue to owe? I'm sorry, your honor. How much money do you continue to owe to the board? Currently, the balance with all the legal fees is $59,000. Okay, and just in sort of unpaid maintenance, how much is that? That's about $20-something thousand dollars, $22. And how did that debt arise? The debt arised initially by legal fees being assessed on my maintenance bill directly. So they would bill multiple legal fees that were not itemized. So I would be expecting to receive $320 in maintenance fees. I live in Brooklyn, so the maintenance is not that much. And then I would receive a bill for $3,000, so $3,500. And what was that for? Legal fees, your honors. Legal fees for what? I'm specified because the legal fees were assessed to me through the board- Were they assessed on every tenant or just on you? On me. Not every tenant? Not every owner? Just myself. Were you causing them to hire lawyers? Is that what it was? Yes, they're saying because they filed a debt collection action. And as this debt collection action was pending, there was no judgment, nothing. In fact, I do have a- So there was debt before the legal fees began being assessed? Exactly. How long had you gone without paying your maintenance fees? Yes, so your honors, the- How long had you gone without paying your fees before they got the lawyers after? So 2013, the balance was zero. And I did speak to the board members and I said we need to address the issue of the balances because they were supposed to credit me for the repairs that were caused by the common element because there's a defect in the ceiling which my insurance, my individual insurance did not cover. And they stated that I need to, because this defect is outside of the rules, I need to go ahead and contact the board. The board did not want to contact their insurance because they didn't want the insurance- So there was a conflict about whether it was their duty or your duty to repair. Correct. And they kept adding the charges on to you. Correct. Did you ever get a written answer about whose job it was to repair? I never got a written answer, but I do have paperwork relating to the inspector who came in. And he actually told me, he said this building is known for this defect. We know this building. This building was built in the 60s and this defect is very well known to a lot of inspectors in the city, which was not known to me. I would not have bought an apartment there, but it's another story. So let me, has there been any mediation with the court's mediation program on this? There's a continual litigation, it's continual- No, mediation. Mediation? Like trying to work out a settlement with a neutral person to try to assist. Not really, your honor. We will, I will send the case to camp, which is what we, it's the court annexed mediation program, and you'll give that a shot. And we'll withhold our judgment until we hear from them. Thank you, your honor. The matter is taken under advisement. All of today's matters are hereby submitted, and we are adjourned. Thank you, your honors. Thank you very much. Court is adjourned.